IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANUEL CHAIREZ,

    Plaintiff,                      No. CIV S-09-0786 GEB GGH P

   vs.

D. DEXTER, et al.,

                                     ORDER &
    Defendants,               FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

       Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are defendants' motion for judgment on the pleadings (Doc. 52), defendants' motion for summary judgment (Doc. 61) and plaintiff's motion to compel (Doc. 45).

       Plaintiff's action continues against nearly a dozen defendants who allegedly violated plaintiff's due process and equal protection rights when he was classified as a gang member and placed in the Security Housing Unit (SHU) for an indefinite term.  Plaintiff also contends that one defendant improperly screened out his inmate appeal.

II. Motion for Summary Judgment

       Legal Standard for Summary Judgment

       Summary judgment is appropriate when it is demonstrated that there exists "no

1

1  genuine issue as to any material fact and that the movant is entitled to judgment as a matter of
2  law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is

material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On June 16, 2009, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154

1  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.
2  1988).
3          The above advice would, however, seem to be unnecessary as the Ninth Circuit
4  has held that procedural requirements applied to ordinary litigants at summary judgment do not
5  apply to prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the
6  district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se*
7  inmates and ... avoid applying summary judgment rules strictly." Id. at 1150.  No example or
8  further definition of "liberal" construction or "too strict" application of rules was given in Ponder
9  suggesting that any jurist would know inherently when to dispense with the wording of rules.
10 Since the application of any rule which results in adverse consequences to the pro se inmate
11 could always be construed in hindsight as not liberal enough a construction, or too strict an
12 application, it appears that only the essentials of summary judgment, i.e., declarations or
13 testimony under oath, and presentation of evidence not grossly at odds with rules of evidence,
14 apply in this dichotomous litigation system where one side must obey the written rules and the
15 other side substantially absolved from doing so.
16     Undisputed Facts
17         The following of defendants' undisputed facts (DUF) are either not disputed by
18 plaintiff, or following the court's review of the evidence submitted, have been deemed
19 undisputed:
20         On May 6, 2008, officers of the Institutional Gang Investigation (IGI) searched
21 plaintiff's cell as part of a larger gang sweep and looked for any documents, letters, drawings or
22 notes that would link plaintiff to a prison gang or a disruptive group.  DUF #4, 5.  Plaintiff was a
23 known member of the South Side Riverside Mad Down gang, which has suspected links to the
24 Mexican Mafia prison gang.  DUF #6; Plaintiff's Deposition (Depo.) at 26-27.  A personal
25 address book, letter and drawings were removed from his cell and plaintiff's tattoos were
26 photographed.  DUF #9, 13, 17, 26

4

1    The address book included a contact for J.T. Thomas, located at 11681 Perris
2 Blvd., Moreno Valley, CA 92557.  DUF #13.  Prior investigations revealed that the address was
3 an established community contact address for another inmate who is a validated member of the
4 Mexican Mafia prison gang.  DUF #14.  It is common practice for Mexican Mafia associates to
5 use an address of a third party to communicate with other gang members.  DUF #15.
6    The letter taken from plaintiff's cell included a sentence that "Big Al" had joined
7 the validated club.  DUF #17.  IGI staff identified "Big Al" as the name for another inmate who
8 has been validated as an associate of the Mexican Mafia.  DUF #18.  Mexican Mafia members
9 often communicate with other members through letters.  DUF #19.
10    The photos of plaintiff's tattoos revealed a Mactlactomei symbol, which is a
11 representation of the Meso-American number 13 and is commonly used to show association with
12 the Mexican Mafia.  DUF #24.  One of the drawings removed from plaintiff's cell was of a
13 symbol identified as the Eternal War Shield, which is also associated with the Mexican Mafia.
14 DUF #26, 27.
15    On May 12, 2008, after reviewing all the above evidence, the IGI determined that
16 sufficient evidence existed to validate plaintiff as an associate of the Mexican Mafia.  DUF #30.
17 The gang validation package containing the evidence was forwarded to members of the Office of
18 Correctional safety for a final review and determination of plaintiff's gang validation.  The gang
19 validation package was provided to plaintiff for his review on May 12, 2008.  DUF #32.  Plaintiff
20 was also provided with an Interview Notification and Evidence Disclosure form that listed the
21 evidence.  DUF #35.
22    Also on May 12, 2008, an Administrative Segregation (Ad. Seg.) Placement
23 notice was completed that placed plaintiff in Ad. Seg. until a final determination was made on his
24 gang validation.  DUF #38.  Plaintiff was served with the notice and placed in Ad. Seg.  DUF
25 #39.
26    On May 14, 2008, plaintiff was formally validated as a member of the Mexican

Mafia, based on the evidence discussed above. DUF # 44.

The next day, May 15, 2008, the classification committee conducted an initial review of plaintiff's placement in Ad. Seg. DUF #45. Plaintiff was present and provided an opportunity to express his views regarding the placement. DUF #46; Depo. at 30-31; Exh. J. The hearing concluded with a decision that plaintiff be placed in the SHU. DUF #47

Plaintiff was transferred to a different prison and placed in the SHU on July 30, 2008 and appeared before the classification committee for an initial hearing on August 12, 2008. DUF #48, 49. Plaintiff was given an opportunity to be heard at this hearing, but was ultimately maintained in the SHU. DUF #51, 52, 53.

Defendant Casey denied plaintiff's inmate appeal on September 3, 2008. Opposition to Summary Judgment (Opposition) at 3.

    Disputed Facts

There are no disputed facts other than plaintiff does believe there was sufficient evidence to validate him as a gang member.

    Analysis

        Due Process

The process constitutionally due to an inmate placed in segregation depends on whether the placement is disciplinary or administrative. Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986). In Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003), the Ninth Circuit determined that California's policy of placing suspected gang members in segregation is an administrative decision, undertaken to preserve order in the prison. When an inmate is placed in segregation for administrative purposes, due process requires only the following procedures:

> Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views.... [D]ue process [ ] does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.

Toussaint, 801 F.2d at 1100-01 (footnote omitted).

Prisoners are entitled to the minimal procedural protections of adequate notice and an opportunity to be heard. Bruce, 351 F.3d at 1287. In addition to these minimal protections, there must be "some evidence" supporting the decision to place a prisoner in segregated housing. Id. (citing Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985)).

Plaintiff's central due process argument is that he was not provided 24 hours of time to review the forms he received on May 12, 2008, in order to provide a rebuttal. The same day that plaintiff received the forms, the package was submitted for further review to other prison officials, and plaintiff was placed in Ad. Seg. Plaintiff was then validated as a gang member on May 14, 2008.

It is undisputed that on May 15, 2008, plaintiff was provided the opportunity to express his views at the classification committee review and that this hearing was three days after plaintiff received the forms and one day after officials validated him as a gang member. Plaintiff takes issue that he was validated as a gang member and then a hearing was held the following day. Plaintiff believes that he should have been allowed to rebut the charges prior to prison officials making the finding. This is a distinction without a difference and plaintiff has presented no evidence that this procedure violated his due process as he was provided a hearing the following day.

Plaintiff has failed to show any violation of due process. Plaintiff received all the due process protections outlined in Bruce. He was provided an informal hearing in a reasonable time where he was allowed to present his views and he was provided a list of the charges and supporting evidence prior to that hearing. To the extent that plaintiff argues that prison regulations mandate 24 hours notice to review the charges, any violation, if one exists, is not a due process violation.

Nor is it undisputed that plaintiff was not placed into the SHU until July 30, 2008, and received a hearing on August 12, 2008.

There was also sufficient evidentiary support for plaintiff's validation as a gang member. The "some evidence" standard sets a low bar, consistent with the recognition that assignment of inmates within prisons is "essentially a matter of administrative discretion," subject to "minimal legal limitations." Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d 1080, with respect to the minimal limitations). A single piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability." Id. at 1288; Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) ("relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board" (citing Hill, 472 U.S. at 455-56 (emphases in original)). The materials relied upon by defendants to validate petitioner as a gang member, which was more than a single piece of evidence, met this standard.

Summary judgment should be granted as to all defendants regarding plaintiff's due process claims.

### Equal Protection

The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).

Plaintiff has not set forth any facts to support an equal protection claim. Plaintiff has not alleged he is a member of a suspect class, that he was treated any different than other similarly situated prisoners or that there was not a legitimate interest to validate him as a gang member and place him in the SHU. Summary judgment should be granted to all defendants for this claim.

### Grievance Process

With respect to plaintiff's claim concerning denial of his grievance, plaintiff is informed that prisoners do not have a "separate constitutional entitlement to a specific prison

1  grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v.
2  Adams, 855 F.2d 639, 640 (9th Cir. 1988). Even the nonexistence of, or the failure of prison
3  officials to properly implement, an administrative appeals process within the prison system does
4  not raise constitutional concerns. Mann v. Adams, 855 F.2d at 640. See also, Buckley v.
5  Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Azeez v. DeRobertis, 568 F.Supp. 8, 10
6  (N.D.Ill.1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any
7  substantive right upon the inmates).

8  Plaintiff alleges that one of the defendants screened out his inmate appeal. As
9  plaintiff has no right to an appeal procedure, summary judgment should also be granted as to this
10 claim.

11 III. Motion for Judgment on the Pleadings

12 The motion for judgment on the pleadings is brought by defendants Cate,
13 Gonzalez, Herndon and Casey. As the undersigned is recommending that summary judgment be
14 granted for all defendants, including Gonzalez, Herndon and Casey and the case closed, the
15 merits of the motion for judgment on the pleadings need not be reached. The motion is vacated.

16 IV. Motion to Compel

17 As the undersigned is recommending that summary judgment be granted and this
18 case closed, the motion to compel is vacated.

19 Accordingly, IT IS HEREBY ORDERED that:

20 1. Plaintiff's motion to compel (Doc. 45) is vacated;

21 2. Defendants' motion for judgment on the pleadings (Doc. 52) is vacated.

22 IT IS HEREBY RECOMMENDED that defendants' motion for summary
23 judgment (Doc. 61) be granted and this case be closed.

24 These findings and recommendations are submitted to the United States District
25 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen
26 days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned
2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
3  shall be served and filed within fourteen days after service of the objections.  The parties are
4  advised that failure to file objections within the specified time may waive the right to appeal the
5  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:     09/20/10

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH: AB
chai0786.sj